# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

**ERIC THOMAS MYERS,**

      **Petitioner,**

**v.**                                   **Civil Action No. 2:15cv49**
                                                                **(Judge Bailey)**

**WARDEN WILLIAMS and DIRECTOR**
**OF BOP,**

      **Respondents.**

## REPORT AND RECOMMENDATION

### I. Procedural History

On July 2, 2015, the *pro se* petitioner, an inmate then-incarcerated at FCI Gilmer[1] in Glenville, West Virginia, initiated this case by filing a Petition for Habeas Corpus Pursuant to 28 U.S.C. §2241. Petitioner paid the required filing fee on July 7, 2015. On July 20, 2015, petitioner filed a motion for court-appointed counsel. By Order entered July 21, 2015, petitioner's motion for appointed counsel was denied. By separate Order entered the same day, the undersigned made a preliminary review of the file, determined that summary dismissal was not warranted at that time, and directed the respondent to file an answer to the petition.

The respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause with a memorandum in support on August 17, 2015. Consequently, a Roseboro Notice was issued on August 19, 2015. On September 8, 2015, petitioner filed a response to the respondent's dispositive motion. Thus, this case is now before the undersigned for a report and recommendation ("R&R"), pursuant to LR PL P 2.

### II. Factual History

---

[1] Petitioner is presently incarcerated at USP Big Sandy in Inez, Kentucky.

According to the parties, the petitioner is currently serving a 152 month sentence imposed by the Western District of Virginia for convictions under 18 U.S.C. §§2118(a) and 2118(c)(1), Robbery of a Pharmacy, and 18 U.S.C. §924(c)(1) Possession/Brandishing of a Firearm in Furtherance of a Crime of Violence. Petitioner's term of imprisonment is to be followed by 5 years of supervised release. The petitioner's current projected release date is August 24, 2016.

### III. The Pleadings

**The Petition**

Petitioner raises three claims, contending that

1) BOP staff retaliated against him by writing him up on false incident reports so that he would lose privileges and good conduct time;

2) because the BOP is biased against him, it will not give him halfway house designation; and

3) the BOP illegally denied him Freedom of Information Act ("FOIA") records and documents that he needs to file a civil suit requesting compensation.

Plaintiff contends he has filed administrative grievances over his claims, but that his halfway house grievance was never properly logged or responded to, and that the BOP fails to respond to grievances within the time limits of its own policies. He attached copies of several grievances, some of which appear to be exhausted.

As relief, he seeks to have all his pending BOP remedies and appeals granted; copies of all appeal documents and electronic staff messages he has written; and to be granted 8 -10 months of halfway house placement. Further, he requests an Order directing the BOP "to release all documents/records used in the SIA/SIS investigation(s) by FCI Jesup and the Department of Justice ("DOJ")[2] on or about April/May 2014;" alternatively, he seeks an Order directing the

---

[2] Plaintiff nowhere explains what the SIA/SIS investigations by FCI Jesup and the DOJ are.

"BOP to get with and make an agreement/settlement with . . . [him] not to disclose the documents . . . [he] need[s] for a lawsuit."[3] Finally, he seeks an Order directing that he be held at FCI Gilmer until this case is decided, "so staff here can't put this problem on someone else at another prison."[4]

**Respondent's Motion to Dismiss or for Summary Judgment**

The respondent argues that the petition should be dismissed or summary judgment granted in its favor because

    1) petitioner failed to exhaust his administrative remedies;

    2) although the BOP evaluated petitioner and recommended him for Residential Reentry Center ("RRC" or "halfway house") placement, the recommendation was denied by the Residential Reentry Manager ("RRM") and the BOP is under no obligation to resubmit or reconsider petitioner for RRC placement.

    3) Plaintiff's retaliation and FOIA claims are constitutional claims that are not cognizable in a §2241 petition.

**Petitioner's Response to Motion to Dismiss or for Summary Judgment**

Petitioner reiterates his arguments on his claims and attempts to refute the respondent's on the same.

### IV. Standard of Review

**A. Motion to Dismiss**

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.1992)

---

[3] Dkt.# 1 at 8.

[4] Id.

(citing 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure §1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. Mylan Labs, Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir.1993); see also Martin, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). Courts long have cited the "rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [a] claim which would entitle him to relief." Conley, 355 U.S. at 45-46. In Twombly, the United States Supreme Court noted that a complaint need not assert "detailed factual allegations," but must contain more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action." Conley, 550 U.S. at 555 (citations omitted). Thus, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," id. (citations omitted), to one that is "plausible on its face," id. at 570, rather than merely "conceivable." Id. Therefore, in order for a complaint to survive dismissal for failure to state a claim, the plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." Bass v. E.I. DuPont de Nemours & Co., 324 F.3d 761, 765 (4th Cir. 2003) (citing Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002); Iodice v. United States, 289 F.3d 279, 281 (4th Cir. 2002)). In so doing, the complaint must meet a "plausibility" standard, instituted by the Supreme Court in Ashcroft v. Iqbal, where it held that a

4

"claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009). Thus, a well-pleaded complaint must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to meet the plausibility standard and survive dismissal for failure to state a claim. Id.

**B. Motion for Summary Judgment**

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. See Blackledge v. Allison, 431 U.S. 63, 80 91977). So too, has the Fourth Circuit Court of Appeals. Maynard v. Dixon, 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. Miller v. Federal Deposit Ins. Corp., 906 F.2d 972, 974 (4th Cir. 1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will not prevent the entry of summary judgment. Anderson v. Liberty Lobby, Inc., 477 U.S. 242-252 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Felty v. Graves-Humphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). Such evidence must consist of facts which are material, meaning that they

create fair doubt rather than encourage mere speculation. <u>Anderson</u>, 477 U.S. at 248. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. <u>Matsushita Elec. Industrial Co. V. Zenith Radio Corp.</u>, 475 U.S. 574, 587-88 1986).

### V. <u>The Second Chance Act</u>

On April 9, 2008, the Second Chance Act of 2007, Pub.L. No. 110-99 was enacted. It amended 18 U.S.C. §3624 and provides that the Director of the BOP shall "ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months) under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community." <u>See</u> 18 U.S.C. § 3624(c)(1). The statute provides that those conditions may include confinement in a community correctional facility/community corrections center/residential re-entry center, all of which are commonly known as a "half-way house." The statute provides that the decision to confine a prisoner in a "half-way" house shall be made on an individual basis and shall be made in light of several factors, most of which are identified in 18 U.S.C. 3621(b). <u>See</u> <u>Miller v. Whitehead</u>, 527 F.3d 752 (8th Cir. 2008) [BOP may consider factors in addition to those identified in 3621(b)]. The factors identified in 18 U.S.C. 3621(b) are as follows:

> (1) the resources of the facility contemplated;
> 
> (2) the nature and circumstances of the offense;
> 
> (3) the history and characteristics of the prisoner;
> 
> (4) any statement by the court that imposed the sentence-(A) concerning the purposes for which the sentence to imprisonment was determined to be warranted; or (B) recommending a type of penal or correctional facility as appropriate; and

6

(5) any pertinent policy statement issued by the Sentencing Commission
pursuant to section 994(a)(2) of title 28."

## VI. Analysis

### A. Proper Party Respondent in a §2241 action

In addition to the Warden, petitioner has named the Director of the Bureau of Prisons as a party in this action.

Title 28 U.S.C. §2241 states in pertinent part that the writ of habeas corpus shall not extend to a prisoner unless he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. §2241(c)(3). "A court . . . entertaining an application for writ of habeas corpus shall forthwith award the writ or issue an order directing the respondent to show cause why the writ should not be granted." 28 U.S.C. §2243. The writ, or order to show cause shall be directed to the person *having custody of the person detained*. Id. (Emphasis added). Therefore, in a §2241 habeas corpus case, the only proper party respondent is the Warden of the institution in which the petitioner is incarcerated. See Braden v. 30th Judicial Circuit Court of Kentucky, 410 U.S. 484, 495 (1973).

Accordingly, petitioner has improperly named the Director of the BOP as an additional respondent in this action and the Director should be dismissed from this action.

### B. Exhaustion of Administrative Remedies

In the response to the petition, the respondent argues that the instant §2241 petition should be dismissed because the petitioner failed to exhaust his administrative remedies. The petitioner maintains that the respondent's argument is without merit; that respondent did not

properly respond to his administrative remedy appeals; did not log his remedies; and/or staff threw his remedies away without logging them.

The undersigned does not dispute that the PLRA mandates the exhaustion of administrative remedies, or that similar principles have been applied in habeas corpus actions. However, the requirements of the PLRA are applicable to civil suits in which a prisoner challenges the conditions of his confinement, not habeas proceedings challenging the execution of a sentence under 28 U.S.C. §2241. See LaRue v. Adams, 2006 WL 1674487 *5 - *7 (S.D. W.Va. June 12, 2006) (citing Smith v. Angelone, 111 F.3d 1126, 1129-31 (4th Cir.) *cert. denied*, 521 U.S. 113 (1997)).[5]

Moreover, to the extent that exhaustion has been applied to habeas corpus, such a requirement is not mandated by statute. Instead, exhaustion prerequisites in habeas corpus actions arising under §2241 are merely judicially imposed. Because the exhaustion requirement is only judicially imposed in habeas proceedings, it follows that a Court has the discretion to waive that requirement in certain circumstances. See Larue at *8 (recognizing that several circuit and district courts have found that the exhaustion requirements may be waived under §2241 and noting that although the Fourth Circuit has not directly addressed this issue, it has

---

[5] In LaRue, the Southern District of West Virginia noted that the purpose of the PLRA was to curtail the filing of frivolous prisoner civil rights actions. LaRue 2006 WL 1674487 at *7. In addition, the Court found it significant that Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) nearly simultaneous with the PLRA and that under the AEDPA Congress established separate procedures for addressing abusive habeas filings. Id. Moreover, the Court found that habeas actions were not typical civil actions because they involve someone's liberty, rather than claims of mere civil liability. Id. The Southern District cited several other district and circuit court cases that have also come to the conclusion that the PLRA and its exhaustion requirements are not applicable to habeas corpus proceedings. Id. (listing cases). The undersigned agrees with the reasoning of the Southern District of West Virginia and finds that a prisoner's challenge to the execution of his sentence under § 2241 is not subject to the PLRA's exhaustion requirements.

shown a willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions).

In this matter, the case has been served, a response has been filed and the matter is ripe for review. Therefore, to dismiss this case for the failure to exhaust at this juncture of the litigation would be a waste of judicial time and resources. Accordingly, the undersigned recommends that exhaustion be waived and this case proceed to a determination on the merits.

## C. **18 U.S.C. § 3625**

In accordance with the Administrative Procedures Act ("APA"), 5 U.S.C. §§701 and 702, "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action with the meaning of a relevant statute is entitled to judicial review thereof," except to the extent that a statute precludes judicial review. In this case, the petitioner challenges the denial of RRC placement prior to his release. That decision is governed by 18 U.S.C. § 3624(c)(1). As previously noted, that section now provides:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

Because such a determination involves a decision regarding an inmate's place of imprisonment, in making a determination under §3624(c), the Director must necessarily consider the five factors enumerated in 18 U.S.C. §3621(b), as outlined previously in this R&R. However, pursuant to 18 U.S.C. §3625, Congress has specifically excluded subsections 3621 and 3624 from judicial review under the APA. See Davis v. Beeler, 966 F.Supp. 483, 489 (E.D. Ky. 1997). Section 3625 states: "[t]he provisions of section 554 and 555 and 701 through 706 of

9

title 5, United States Code, do not apply to the making of any determination, decision, or order under this subchapter." Accordingly, any substantive decision by the BOP with regard to the petitioner's eligibility for RRC placement, or the length of time in an RRC, is not reviewable by this Court. See Lyle v. Sivley, 805 F.Supp. 755, 760 (D. Ariz. 1992). However, even where judicial review under the APA is specifically excluded by statute, the court may still review whether there is clear evidence of unconstitutional conduct or evidence that the agency acted outside the scope of its authority. Webster v. Doe, 486 U.S. 592 (1988); Turner v. Safley, 482 U.S. 78, 84 (1987); Procunier v. Martinez, 416 U.S. 396, 405 (1974); Davis v. Beeler, 966 F.Supp. at 489.

It is well-established that an inmate has no constitutional right to be confined to a particular institution, Meachum v. Fano, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. Olim v. Waukinekona, 461 U.S. 238 (1983). Thus, because the petitioner has no protected liberty interest in being placed in an RRC prior to his release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. For the reasons discussed below, the undersigned has determined that no such violation has occurred.

As previously noted, the petitioner argues that because the BOP is biased against him due to his "investigation,"[6] it refuses to give him halfway house placement. He contends he is "eligible for the Second Chance Act of up to twelve months halfway house placement and needs

---

[6] Dkt.# 1-4 at 3.

it after all of these years"[7] in prison, to adequately prepare him for the transition to life and employment outside of prison. He asserts that he was submitted for 6-9 months halfway house placement in a house in St. Albans, West Virginia, but was told it had no bed space for him. He contends that he then talked to Mr. McAdams, another Unit Manager at FCI Gilmer, and McAdams told him he had "never heard of an inmate being referred/submitted for 6-9 months halfway house placement and not getting a day [sic] in his whole career and his unit team not [sic] re-submit him again to another halfway house and that something was going on behind the scene that someone wasn't telling me."[8] He contends that he has submitted paper and electronic requests to the

> CMC, AW, and Warden because my Case Manager and my Unit Manager told me verbally that they were not required to re-submit me and that they were not going to. Until this date no one will answer in writing why they won't give me halfway house, and they won't give me copies of the requests that I filed, the paper ones can't be obtained I don't think but the Courts can ask for the electronic ones that I filed.

Dkt.# 1-1 at 1.

The respondent asserts that after considering the five factors set forth in 18 U.S.C. §3621(b), at a January 29, 2015 Program Review, Petitioner's Unit Team considered him for RRC placement and determined that 181 to 270 days (6 – 9 months) RRC placement would meet Petitioner's release needs and assist him with his transition and release to the community.[9] These reasons were incorporated into the Institutional Referral ("IR") for RRC Placement, which was

---

[7] Dkt.# 1 at 6.

[8] Dkt.# 1-1 at 1.

[9] Dkt.# 12-1, ¶10 at 2, and Dkt.# 12-3.

11

sent to the CCM's office on or about February 10, 2015.[10] However, upon its review, the Community Corrections Office advised that the RRC Director denied petitioner's RRC placement,[11] because of his prior 12 months' discipline history and non-compliance with institution rules and staff. [12] Reference was made to the January 29, 2015 Progress Report, which noted that petitioner had made little to no progress in meeting his recommended goals.[13] Upon receiving the RRC response, the denial code was applied[14] in SENTRY.[15]

Therefore, it would appear that the sum of the petitioner's argument is that the BOP refused to release him to an RRC because it was retaliating against him, or was biased against him because of some unspecified investigation at a prior institution. Even if true, these allegations do not state a clear constitutional violation. Accordingly, the issue becomes whether the petitioner was properly reviewed for RRC placement utilizing the required five factors. In her declaration, Sarah Lilley, the Legal Assistant for the Consolidated Legal Center at FCI Beckley, who handles legal matters for various BOP institutions, including FCI Gilmer, notes

---

[10] Dkt.# 12-2.

[11] Dkt.# 12-1, ¶ 17.

[12] Petitioner's discipline history is reflected on the January 2015 Progress Report, and reveals that between February 2, 2007 and November 3, 2014, he was sanctioned for failing to stand count three times; being in an unauthorized area once; refusing to obey an order three times; three incidents of phone abuse; one incident of giving/accepting money without authorization; and one incident of lying. See Dkt.# 12-3 at 4 – 5. Additionally, on May 11, 2015, he was found guilty of violating Code 113, Possessing Drugs/Alcohol, for having Suboxone in his possession at FCI Gilmer. See Declaration of Sarah Lilly, Legal Assistant for the Consolidated Legal Center, FCI Beckley, Dkt.# 12-1, ¶18 at 3, and ¶ 28 at 3, and Inmate Discipline Data Chronological Disciplinary Record, Dkt.# 12-8.

[13] Dkt.# 12-1, ¶ 19 at 3.

[14] Dkt.# 12-1, ¶ 20 at 3.

[15] SENTRY is a real-time information system consisting of various applications for processing sensitive but unclassified inmate information and for property management. Data collected and stored in the system includes information relating to the care, classification, subsistence, protection, discipline, and programs of federal inmates. SENTRY was developed and implemented in 1981 and continues to be updated to reflect new requirements; it has been modernized to take advantage of web-based technologies. See https://www.bop.gov/foia/sentry.pdf

that an RRC placement is determined at a Program Review with the inmate's Unit Team. As early as January, 2015, petitioner's Unit Team considered him under the five 18 U.S.C. §3621(b) factors and determined that a 6 – 9 month RRC placement would meet his needs and be of sufficient duration to provide successful reintegration into the community.[16] In recommending the petitioner for 181 – 270 days RRC placement on home confinement, staff specifically noted that: "(1) [t]here are available community corrections centers in his release area; (2) [t]he nature and circumstances of the offense indicate he is eligible for community corrections participation. There are no extenuating circumstances that would preclude placement. (3) The history and characteristics of the inmate are: he does have an established residence but not employment. (4) The sentencing court did not make any statement on the Judgement and Commitment Order regarding Residential Re-entry Center placement. (5) Five year supervised release term was imposed.[17] While this summary sheet may appear perfunctory, the referral process involves far more than this one-page Institutional Referral which become final when signed by the warden.

Petitioner was referred for an RRC placement in the range of 180 – 270 days based on an individualized assessment of his needs in transitioning back into community, presumably because the 180 – 270 days was considered sufficient for him to capitalize on his skills and experience and take full advantage of the transitional services and programs in the halfway house to facilitate his transition back into the community. However, given the RRC Director's refusal to accept him based upon his failure to abide by institutional rules and his failure to meet his program goals, petitioner was not approved for RRC placement. Nonetheless, as required by the

---

[16] Dkt.# 12-1 ¶9-10 at 2.

[17] Dkt.# 12-2, §12.

Second Chance Act, the petitioner's Unit Team made its review on an individual basis and considered the appropriate factors in recommending his 181 – 210 day placement. The fact that the petitioner was not recommended for the twelve month RRC placement he wanted, so that he could begin transitioning to life outside of prison does not establish that the BOP was either derelict in its duties or wrong. Because the petitioner has no protected liberty interest in being placed in a RRC prior to release, and the decision whether to make such placement is clearly a matter of prison management within the knowledge and expertise of BOP officials, this Court cannot intervene in that decision unless a clear constitutional violation occurred. In this case, the petitioner merely makes a conclusory allegation that the decision of the BOP was retaliatory. However, the discipline history recounted in petitioner's January 15, 2015 DOJ Inmate Skills Development Plan Progress Report[18] and his Inmate Discipline Data Chronological Disciplincary Record[19] reveals that petitioner's past behavior frequently showed a lack of respect for rules and regulations, indicating an inability to function appropriately in the community, even while under supervision. Whether or not that makes the petitioner a threat to society is a decision best left to the knowledge and expertise of prison officials. In any event, the Court can find no clear constitutional violation in the BOP's decision to deny the petitioner RRC eligibility. Moreover, there is no evidence that the determination was arbitrary, capricious, or an abuse of discretion. Therefore, the petitioner cannot show that BOP officials violated the Second Chance Act, and this claim should be dismissed.

**D. Retaliatory False Incident Reports by Staff**

---

[18] Dkt.# 12-3 at 4 – 5.

[19] Dkt.# 12-8.

Petitioner contends that the BOP staff retaliate against him by writing him up in false incident reports, pushing him till he "snapped," to cause him to lose privileges and good time credit, to deny him an "unbiased chance" to return to and be a productive member of society.[20]

The petitioner is not entitled to any relief under §2241 on this claim because it does not challenging the legality of his custody and does not seek the immediate or speedier release from imprisonment. Rather, here, petitioner is challenging the conditions of confinement or a violation of his civil rights, and these are not claims which can be brought in a habeas corpus petition. See Preiser v. Rodriguez, 411 U.S. 475, 499-500 (1973) (federal habeas relief extends to prisoners challenging the fact or duration of imprisonment and §1983 actions apply to inmates making constitutional challenges to conditions of confinement). See also Baine v. Dretke, No. 7:04-CV-198-R, 2004 WL 2866966, at *3 (N.D. Tex. Dec. 10, 2004), (retaliation claim not cognizable in habeas proceeding); Scrivens v. Pearson, No. 5:10cv81-DCB-MTP, 2010 WL 6332074, *1 (S.D. Miss. Aug. 20, 2010), (retaliation and harassment claims challenge the nature and conditions of confinement and must be brought in a civil rights complaint, not in a habeas action); Buckom v. O'Konek, 243 F.3d 536 (4th Cir. Dec. 21, 1999) (unpublished)(access to courts claim more property raised in civil rights complaint, not habeas action); Mpala v. Smith, No. 06-841, 2006 WL 1455733, *3 (M.D. Pa. May 25, 2006), (denial of access to courts is a §1983 claim, not a habeas claim); Speight v. Minor, No. 07-1540, 245 Fed. Appx. 213, 215 (3rd Cir. Aug. 28, 2007) (questioning whether a retaliation claim could be cognizable in 2241 action challenging discipline).

---

[20] Dkt.# 1 at 5.

In order to pursue this claim, because he is a federal prisoner, petitioner must file a lawsuit governed by Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics, 403 U.S. 399 (1971)[21] and pay the $400.00 filing fee.[22]

**E. FOIA Request**

Petitioner contends that the BOP staff "maliciously" withheld from him FOIA documents he needs to file a civil suit requesting monetary compensation. He contends that the BOP is deliberately hindering his gathering of these records, "hopeing [sic] the statue [sic] of limitations will run out."[23]

Again, petitioner is not entitled to any relief under §2241 on this claim because it does not challenge the legality of his custody or seek an immediate or speedier release from imprisonment. To the contrary, "[a] FOIA action seeking access to documents does not implicate the plaintiff's conviction and is not a request for 'present or future release' which is the 'core' [of] habeas corpus relief." United States v. Terry, 500 Fed.Appx. 519 (7th Cir. 2013) (quoting Wilkinson v. Dotson, 544 U.S. 74, 81 (2005)); see also Persico v. United States Dep't. of Justice, 426 F.Supp. 1013, 1021 (E.D. Ill. 1977) ("[P]etitioner has incorrectly attempted to bring a [FOIA] claim within a Title 28, Section 2241 action. Habeas Corpus relief would not be appropriate in such a case.").

---

[21] In Bivens, the Supreme Court created a counterpart to § 1983 so that individuals may bring suit against a federal actor for violating a right guaranteed by the Constitution or federal law. Because petitioner is a federal prisoner, he must therefore file a Bivens action as opposed to one under § 1983.

[22] Although a grant of *in forma pauperis* status would absolve the petitioner from pre-paying the $400.00 filing fee, under the PLRA, the entire fee would be collected from his Prison Trust Account in increments.

[23] Dkt.# 1 at 6.

If petitioner wishes to pursue this claim, he must file a FOIA action and pay the requisite filing fee to raise the claim. This type of claim is not cognizable in a §2241 action and should be dismissed.

## VII. Recommendation

Based on the foregoing, the undersigned recommends that the respondent's Motion to Dismiss or for Summary Judgment (Dkt.# 11) be **GRANTED** and the petitioner's § 2241 petition be **DENIED** and **DISMISSED with prejudice**.

**Within fourteen (14) days** after being served with a copy of this Recommendation, **or by November 2, 2015**, any party may file with the Clerk of the Court, written objections identifying the portions of the Recommendation to which objections are made, and the basis for such objections. A copy of such objections should also be submitted to the United States District Judge. **Failure to timely file objections to the Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Recommendation.** 28 U.S.C. §636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to send a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as shown on the docket, and to all counsel of record via electronic means.

DATED: October 19, 2015

/s/ James E. Seibert_____
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE