IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
ELKINS

ERIC THOMAS MYERS,

Petitioner,

v.                                                          CIVIL ACTION NO. 2:15-CV-49
                                                            (BAILEY)
WARDEN WILLIAMS,

Respondents.

## ORDER ADOPTING REPORT AND RECOMMENDATION

### I. INTRODUCTION

On this day, the above-styled matter came before this Court for consideration of the Report and Recommendation of United States Magistrate Judge James E. Seibert. [Doc. 17]. Pursuant to this Court's Local Rules, this action was referred to Magistrate Judge Seibert for submission of a proposed report and recommendation ("R&R"). Magistrate Judge Seibert filed his R&R on October 19, 2015, wherein he recommends this Court deny and dismiss petitioner's § 2241 petition with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of the magistrate judge's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the findings or recommendation to which no objections are addressed. ***Thomas v. Arn***, 474 U.S. 140, 150 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); ***Snyder v.***

*Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); ***United States v. Schronce***, 727 F.2d 91, 94 (4th Cir. 1984). Here, objections to Magistrate Judge Seibert's R&R were due within fourteen (14) days of service, pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), or by November 2, 2015. The docket reflects that service was accepted on October 21, 2015. [Doc. 18]. Petitioner timely filed his Objection on October 29, 2015. [Doc. 19]. Accordingly, this Court will review the portions of the R&R to which petitioner objects under a *de novo* standard of review. The remainder of the R&R will be reviewed for clear error.

## II.  BACKGROUND

Petitioner is presently serving a 152-month sentence imposed in 2004 by the United States District Court for the Western District of Virginia for convictions under 18 U.S.C. §§ 2118(a) and 2118(c)(1), Robbery of a Pharmacy, and 18 U.S.C. § 924(c)(1), Possession/Brandishing of a Firearm in Furtherance of a Crime of Violence. [Docs. 1 at 2, 12-1 at 1]. Petitioner's term of imprisonment is to be followed by 5 years of supervised release. [Doc. 1 at 2]. His current projected release date, the date on which he will complete serving his sentence with consideration for good conduct time, is August 24, 2016. [Doc. 21-1 at 1].

On July 2, 2015, petitioner filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 ("§ 2241"). [Doc. 1]. Therein, petitioner claims that:

(1) Bureau of Prisons ("BOP") staff retaliated against him by writing false incident reports so that he would lose privileges and good conduct time;

(2) The BOP is biased against him and thus will not grant him halfway house designation; and

(3) The BOP illegally denied him Freedom of Information Act ("FOIA") records and documents that he needs to file a civil suit requesting compensation.

2

[*Id.* at 5-6]. Petitioner also contends that he has filed administrative grievances regarding his claims, but his halfway house grievance was never properly logged nor responded to, and the BOP failed to respond to his grievances within the time limits prescribed by its own policies. [*Id.* at 7-8]. As relief, petitioner requests that this Court grant all of his pending BOP remedies and appeals; grant him copies of all appeal documents and "electronic staff messages" that he wrote; allow him 8-10 months of halfway house placement; direct the BOP to "release all documents/records used in the SIA/SIS investigation(s) by FCI Jesup and the Department of Justice on or about April/May 2014," or alternatively "direct the BOP to get with and make an agreement/settlement with [him] not to disclose the documents [he] need[s] for a lawsuit;" forbid the BOP from requesting extensions; and order that he is held at FCI Gilmer until the adjudication of this case "so staff here can't put this problem on someone else at another prison." [*Id.* at 8].

In response to the Court's July 21, 2015, Order to Show Cause [Doc. 9], respondent filed a Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause on August 17, 2015. [Doc. 11]. In his supporting memorandum, respondent argues that the petitioner's § 2241 should be dismissed or that summary judgment should be granted in his favor because petitioner failed to exhaust his administrative remedies and thus the Court need not reach the merits. [Doc. 12 at 5]. Moreover, even if petitioner had exhausted his administrative remedies, he is not entitled to relief because the BOP fulfilled its obligation to review petitioner for halfway house placement pursuant to the factors in 18 U.S.C. § 3621(b), and it is not obligated to resubmit a favorable recommendation to the

Residential Reentry Center ("RRC") Director[1] or to reconsider petitioner for halfway house placement as a result of the RRC Director's denial of the BOP's initial recommendation. [*Id.* at 5-9]. Relatedly, respondent argues that halfway house placement is not mandatory, nor is there a minimum amount of time a prisoner must spend in a halfway house before reentry into society, and thus petitioner does not have a protected liberty interest in being placed in a halfway house nor is he being held in custody unlawfully. [*Id.*]. Respondent also argues that petitioner's retaliation and FOIA claims are not cognizable under a § 2241 petition. [*Id.* at 9-12].

On September 8, 2015, petitioner filed a Response to Respondent's Motion to Dismiss or for Summary Judgment, [Doc. 16], wherein he reasserts many of the arguments from his § 2241, including that he exhausted his administrative remedies, that some of his paperwork was mistakenly thrown away or not logged, and that the BOP should give him 9 months of halfway house placement or else it "has not done exactly what is required of them." [*Id.*]. Petitioner also argues that the "disciplinary history" that is preventing his halfway house placement is the result of "the retaliatory incident reports that staff wrote and [on which it] kangaroo courted him." [*Id.* at 3]. He contends that the alleged false incident reports "have to do with loss of good time which is keeping petitioner in prison longer," and thus that his constitutional claims are cognizable under a § 2241 petition. [*Id.*

---

[1]The process by which an inmate receives halfway house placement involves a BOP Unit Team reviewing the inmate pursuant to factors found in 18 U.S.C § 3621(b), taking into consideration the inmate's circumstances and needs, and filling out a Residential Reentry Center Referral, which denotes the amount of time the Unit Team determined and recommends that the inmate be placed in a halfway house prior to the conclusion of the inmate's term of incarceration. This referral is forwarded to the Residential Reentry Office, where the Residential Reentry Center Director reviewes the referral and makes a final determination as to whether the inmate will receive halfway house placement. [*See* Docs. 12-1, 12-2].

at 5]. He also asserts that he should be permitted to raise the FOIA claim because he attempted to file an appeal and followed-up with it several months later. [*Id.* at 5-6]. Additionally, he notes that he wanted to remain at FCI Gilmer in order to have access to his paperwork and have the staff "correct their wrong" rather than require another prison to do so. [*Id.* at 4]. Petitioner concludes his response by alleging cover-ups and a lack of accountability on the Government's part, and stating his rationale for necessitating halfway house placement. [*Id.* at 6].

On October 19, 2015, Magistrate Judge Seibert filed the instant R&R [Doc. 17], recommending that this Court deny and dismiss with prejudice petitioner's § 2241. In so recommending, the magistrate judge first notes that the director of the BOP is an improperly named party and should be dismissed. [*Id.* at 7]. This Court notes that the director of the BOP was, in fact, dismissed from this action pursuant to the Court's July 21, 2015, Order to Show Cause. [Doc. 9]. The magistrate judge then addresses respondent's argument that petitioner failed to exhaust his administrative remedies, noting that the statute does not mandate the administrative remedy exhaustion requirement–it is merely judicially imposed, and the Court has discretion to waive the requirement. [*Id.* at 8]. Accordingly, the magistrate judge recommends that exhaustion be waived here because dismissal for failure to exhaust at this point in the proceedings would "be a waste of judicial time and resources." [*Id.* at 9].

The R&R then addresses the merits of petitioner's § 2241. First, the magistrate judge notes that because petitioner has no protected liberty interest in halfway house placement and the decision regarding his placement is "a matter of prison management

5

within the knowledge and expertise of BOP officials," substantive decisions by the BOP regarding a petitioner's eligibility for or duration in halfway house placement are not reviewable by the Court, but the Court may review the decision for clear evidence of unconstitutional conduct or action exceeding authority. [*Id.* at 9-10]. Ultimately, Magistrate Judge Seibert finds that petitioner's allegation that the BOP refused to release him to be placed in a halfway house because it was retaliating against him or because it was in some way biased against him, even if true, does not indicate a clear constitutional violation. [*Id.* at 10-12]. Thus, the question becomes whether petitioner was properly reviewed for halfway house placement pursuant to the five factors required by 18 U.S.C. § 3621(b), which the magistrate judge answers in the affirmative, reasoning that the initial recommendation to RRC Director that petitioner should receive a 6 to 9-month placement serves to show that the factors were properly considered, despite the fact that petitioner's disciplinary record ultimately caused the RRC Director to deny petitioner halfway house placement. [*Id.* at 12-14]. Accordingly, the magistrate judge finds no evidence of a clear constitutional violation and recommends petitioner's claim be dismissed. [*Id.* at 14].

Regarding petitioner's claim of retaliatory false incident reports by BOP staff, the magistrate judge finds it to be improperly brought in a habeas corpus petition because it "does not challeng[e] the legality of his custody and does not seek the immediate or speedier release from imprisonment." [*Id.* at 15]. Similarly, the magistrate judge finds that petitioner is not entitled to relief under § 2241 on his FOIA request claim because it is not a request for present or future release. [*Id.* at 16]. For these reasons, Magistrate Judge Seibert recommends petitioner's § 2241 be denied and dismissed with prejudice. [*Id.* at

17].

On October 29, 2015, petitioner filed his Objection to Report and Recommendation. [Doc. 19].

## III.    DISCUSSION

In his objection, petitioner first asserts that he has exhausted his remedies. [*Id.* at 1]. He then disagrees with the magistrate judge's conclusion that petitioner's retaliatory false incident reports claim is not seeking speedier release from imprisonment, arguing that he would be released from prison approximately two months sooner if the Court found in his favor on that particular claim. [*Id.*]. After reminding the Court that he is not seeking monetary funds, petitioner discusses his inclusion of a letter from the U.S. Department of Justice Office of Professional Responsibility, mentioning that the letter states that he could appeal to the federal courts if dissatisfied. [*Id.* at 1-2]. He also discusses his inclusion of a letter from U.S. Congressman David B. McKinley, which petitioner contends was a response to one of his "several complaints" to the congressman about the lack of response to his FOIA appeal. [*Id.* at 2]. Petitioner then asks the Court for a hearing on or, alternatively, to order the BOP to grant his "remed[ies]," indicating that if they are indeed exhausted, the Court should have the ability to request copies of them. [*Id.* at 2-3]. Petitioner then contends that the Second Chance Act requires the Director of the BOP to ensure that a prisoner spend a portion of his term of imprisonment under conditions enabling the prisoner to prepare for reentry into society, which the BOP has improperly refused. [*Id.* at 3]. Finally, petitioner asserts that he should not have lost the good time he did and that his Unit Team's 6 to 9-month halfway house placement recommendation

indicates that he needs it, and asks the Court for reconsideration. [*Id.*].

**A. Standard of Review**

The magistrate judge's R&R correctly explains the standard of review applicable here. Importantly, in considering a motion to dismiss for failure to state a claim, the Court looks to whether the petitioner alleged facts sufficient to state all elements of his claim. *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003). These factual allegations must be "enough to raise a right to relief above the speculative level" and more than merely conceivable. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). As required by the Supreme Court of the United States, the claim must be facially plausible–the pleadings must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Petitioner's claim must offer more than "a sheer possibility that a defendant has acted unlawfully" in order to survive dismissal for failure to state a claim. *Id.*

Additionally, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to summary judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In considering evidence at the summary judgment stage, any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The existence of a "scintilla" of

evidence favoring the non-moving party will not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987).

**B. Analysis**

In considering the arguments made in petitioner's objection pursuant to the above-stated standard of review, it is apparent to this Court that petitioner has not met his evidentiary burden. As discussed herein, petitioner has not offered evidence sufficient to raise his entitlement to relief above a speculative level. Even in considering the evidence in the light most favorable to petitioner, petitioner's claim is merely colorable and insufficient to survive motions to dismiss and for summary judgment.

*1. Exhaustion of Administrative Remedies*

In his objection, petitioner requests a hearing on his administrative remedies, averring that they are considered exhausted. Petitioner's § 2241 argues that his administrative remedies are considered exhausted because respondent did not properly respond to them nor were they logged. [Doc. 1 at 8]. Respondent asserts that petitioner failed to exhaust his administrative remedies prior to bringing his habeas action, citing to SENTRY's[2] indication that petitioner's only administrative remedy filed in 2015–in other words, the only one that could have contested his halfway house placement denial–dealt with a Discipline Hearing Officer ("DHO") appeal, which was itself denied on July 27, 2015. [Doc. 12 at 4-5].

---

[2]SENTRY is the BOP's primary record database.

An inmate should "exhaust adequate alternative remedies before filing" a writ of habeas corpus in federal court. ***Boumediene v. Bush***, 533 U.S. 723, 782 (2008). Habeas corpus is always available "to safeguard the fundamental rights of persons wrongly incarcerated," but it is "the avenue of last resort." ***Timms v. Johns***, 627 F.3d 525, 531 (4th Cir. 2010) (citing ***Martin-Trigona v. Shiff***, 702 F.2d 380, 388 (2d Cir. 1983)). Although petitioner submitted some documentation whereby it is indicated that he did file administrative remedies [Docs. 1-2, 1-3, 1-4], review of SENTRY Administrative Remedy Generalized Retrival indicates that, while he has filed a multitude of administrative remedies during the course of his incarceration requesting DHO appeals and that incident reports be expunged, the only one filed with the BOP after his halfway house placement denial was the DHO appeal referred to by respondent. [Doc. 12-6 at 19]. Regardless, because exhaustion requirements for filing pursuant to § 2241 are judicially imposed, this Court has discretion to waive exhaustion in certain circumstances and proceed to the merits of petitioner's claim. ***LaRue v. Adams***, 2004 U.S. Dist. LEXIS 31291 (S.D. W.Va. 2004) (citing ***McCarthy v. Madigan***, 503 U.S. 140, 144 (1992)) (noting the Fourth Circuit's willingness to adopt a futility exception to the general exhaustion requirement in habeas corpus actions). Being that this matter has been fully briefed and in the interest of judicial economy, this Court finds cause to waive the exhaustion requirement and proceed to the merits of petitioner's claim.

*2. Retaliatory False Incident Reports and Assurance of Halfway House Placement*

Petitioner argues that retaliatory false incident reports resulted in the denial of his halfway house placement, thus keeping him in prison longer and thereby enabling the

10

claim to be brought under § 2241. Even assuming *arguendo* that it may be a viable claim, petitioner has not offered sufficient evidence to survive either a motion to dismiss or motion for summary judgment. In addition to the supporting facts in his § 2241, the evidence petitioner submitted consists of a copy of a Request to Staff, by which petitioner had requested information about administrative remedies he was awaiting, and that the BOP staff had responded to by indicating that the Central Office was behind, so petitioner could either wait for a response or consider the next steps to take in case of denial [Doc. 1-2]; an electronic message from BOP staff dated prior to the BOP's response to petitioner's Request to Staff, by which he asserts he verified that the messaging system worked [Doc. 1-3]; a Request for Administrative Remedy, whereby petitioner alleges that, in retaliation for his "investigation," his due process rights were violated by BOP staff [Doc. 1-4 at 2-3]; a copy of an appeal of his administrative remedy, which argues that his request for a remedy was not given fair consideration [*Id.* at 4]; and a note that says the included documents demonstrate that he "contested staff being retaliatory and . . . asked to be treated fairly on halfway house because BOP staff had already [ ] threatened to make sure [he] didn't get any halfway house." [*Id.* at 1]. Regardless of the validity of petitioner's retaliation claim–the merits of which this Court will not address–these pieces of evidence and petitioner's rendition of the facts do not establish that, had these "retaliatory" incident reports not been filed, the RRC Director would have accepted petitioner's Unit Team's recommendation that he receive halfway house placement. Petitioner's halfway house placement was refused by the RRC Director due to petitioner's "discipline history within the last 12 months, his non-compliance with institution rules and with institution staff." [Doc. 12-1 at ¶ 18]. Review of petitioner's Inmate Discipline Data indicates that petitioner was

reported for sanctioned incidents seven times in 2014. [Doc. 12-8 at 1-2]. Petitioner only appears to have challenged one report as improper [Doc. 1-4 at 2], and that incident report number does not appear on the Inmate Discipline Data. As such, it is apparent that petitioner frequently demonstrated a lack of respect for rules and regulations, and there is support for the RRC Director's decision that cause existed to deny petitioner halfway house placement for disciplinary reasons.

Moreover, contrary to petitioner's assertion that the Director of the BOP is required to ensure a prisoner spend a portion of his term of imprisonment in a halfway house, it is not mandatory that an inmate receive halfway house placement. Petitioner's emphasis in his objection on the R&R's first citation to the Second Chance Act omits the full text of the statute, which reads:

> The Director of the Bureau of Prisons shall, to the extent practicable, ensure that a prisoner serving a term of imprisonment spends a portion of the final months of that term (not to exceed 12 months), under conditions that will afford that prisoner a reasonable opportunity to adjust to and prepare for the reentry of that prisoner into the community. Such conditions may include a community correctional facility.

18 U.S.C. § 3624(c)(1). Additionally, 28 C.F.R. § 570.21 provides that "[i]nmates may be designated to community confinement as a condition of pre-release custody and programming during the final months of the inmate's term of imprisonment, not to exceed twelve months." 28 C.F.R. § 570.21(a). The C.F.R. also states that "[i]nmates will be considered for pre-release community confinement . . . on an individual basis [ ]." 28 C.F.R. § 570.22. The language of these statutory provisions makes it evident that pre-release community confinement, or halfway house placement, is not an automatic aspect of an imprisonment term. An inmate *may* be designated to a halfway house, rather than *must*. The Director of the BOP shall ensure halfway house placement *to the extent*

*practicable*–if placement is not practicable, discretion is permitted to refuse halfway house placement. Decisions regarding halfway house placement are made *on an individual basis*, rather than necessarily granted. Also apparent from the statutory language is that it establishes statutory maximums for placement durations; there is not a statutory minimum. Further, as reflected by the Third Circuit's decision in ***Woodall***, "that the BOP may assign a prisoner to a [halfway house] does not mean that it must." ***Woodall v. Fed. Bureau of Prisons***, 432 F.3d 235, 251 (3rd Cir. 2005).

The statutory language also serves to demonstrate that petitioner's retaliatory false incident reports claim, which he asserts led to the denial of his halfway house placement and thus prevented his release at an earlier date, does not implicate an earlier release from imprisonment. The C.F.R. indicates several times that community confinement, in other words halfway house placement, is a *pre-release* designation. See 28 C.F.R. §§ 570.20(a), 570.21(a)-(b), 570.22. The Code also notes that the Director of the BOP is to consider an inmate for designation in conditions that will enable the inmate to prepare for reentry into society for "a portion of the final months of that term" of imprisonment. 18 U.S.C. § 3624(c)(1). Accordingly, the halfway house placement petitioner seeks, even if granted, would not result in the immediate or speedier release from his term of imprisonment, nor does petitioner's claim ultimately challenge the duration or legality of his custody, as required to seek the remedy of habeas corpus. See ***Presier v. Rodriguez***, 411 U.S. 475, 499-500 (1973).

Upon review for clear evidence of unconstitutional conduct or evidence that the BOP

13

acted outside the scope of its authority in denying petitioner halfway house placement,[3] this Court finds that petitioner has not demonstrated nor provided evidence sufficient to imply that a violation of his constitutional rights took place during the halfway house referral process. Importantly, as noted by the magistrate judge, an inmate has no constitutional right to be confined to a particular institution, *Meachum v. Fano*, 427 U.S. 215, 223 (1976), nor any "justifiable expectation" that he will be confined in a particular prison. *Olim v. Waukinekona*, 461 U.S. 238, 245 (1983). Thus, petitioner has no protected liberty interest in halfway house placement, and a decision regarding such placement is a matter of prison management. Moreover, prison administration is a matter that "courts are ill equipped to deal with. . . . Running a prison . . . requires expertise, planning, and the commitment of resources," and thus is a task for which the separation of powers doctrine counsels judicial restraint. *Turner v. Safley*, 482 U.S. 78, 84-85 (1987). Here, as evidenced by the Inmate Skills Development Plan [Doc. 12-3], petitioner's Unit Team properly and thoroughly considered him for halfway house placement, pursuant to the requirements of 18 U.S.C. § 3621(b), and in fact agreed with petitioner that time in halfway house conditions would assist him in preparing to transition back into the community. However, the RRC Director disagreed, a decision made within the knowledge and expertise of a BOP official and for which there is no evidence suggesting that it was arbitrary, capricious, or an abuse of discretion. Petitioner's unsubstantiated allegation that the denial decision was retaliatory is unpersuasive.

---

[3]See *Turner v. Safley*, 482 U.S. 78 (1987).

14

### 3. Relevance of Documents Attached to Objection

Petitioner included as support with his objection two letters–one from the U.S. Department of Justice Office of Professional Responsibility [Doc. 19-1] and the other from U.S. Congressman David B. McKinley [Doc. 19-2]. Review of each indicates that neither one is pertinent nor supportive of petitioner's averments. The letter from the Office of Professional Responsibility, which is a response to petitioner's June 14, 2015, FOIA request pertaining to his FOIA appeal, advises petitioner as to proper procedures and directs any further inquiries to the proper offices. It also notes how he may appeal his dissatisfaction with the contents of the letter itself, and that judicial review of that appeal may be available in the federal courts. As such, that letter has no relevance to the instant R&R under consideration. The letter from Congressman McKinley is indeed a response to petitioner's inquiry with the congressman's office, but it simply requests written authorization to pursue his claims and provides no evidentiary support beneficial to petitioner's assertions.

### 4. Petitioner's FOIA Claim

To the extent that petitioner's objection objects to the magistrate judge's findings regarding petitioner's FOIA requests included in the § 2241, this Court agrees with the R&R's conclusion that such requests cannot be made in a habeas corpus petition. In his request for relief, petitioner asks the Court to order the BOP to "Release all Documents/Records used in the SIA/SIS investigation(s) by FCI Jesup and the Department of Justice on/about April/May of 2014 or Direct the BOP to get with and make an agreement/settlement with me not to disclose the documents I need for a lawsuit . . . ." [Doc. 1 at 8]. As discussed herein, the remedy available under a habeas corpus petition

is immediate or speedier release from a term of imprisonment. "A FOIA action seeking access to documents does not implicate [petitioner]'s conviction and is not a request for 'present or future release' which is the 'core' [of] habeas corpus relief." *United States v. Terry*, 500 Fed.Appx. 519 (7th Cir. 2013) (quoting *Wilkinson v. Dotson*, 544 U.S. 74, 81 (2005)). Accordingly, petitioner's FOIA request is improperly raised in his § 2241.

For all of the foregoing reasons, petitioner's objection is **OVERRULED**.

## IV. CONCLUSION

Upon careful review of the R&R, it is the opinion of this Court that the magistrate judge's Report and Recommendation **[Doc. 17]** should be, and is, hereby **ORDERED ADOPTED** for the reasons more fully stated in the report. Further, petitioner's Objection **[Doc. 19]** is **OVERRULED**. Accordingly, respondent's Motion to Dismiss or for Summary Judgment and Response to Order to Show Cause **[Doc. 11]** is hereby **GRANTED** and petitioner's Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 **[Doc. 1]** is hereby **DENIED** and **DISMISSED WITH PREJUDICE**. Finally, this case is hereby **ORDERED STRICKEN** from the active docket of this Court.

Upon an independent review of the record, this Court hereby **DENIES** petitioner a certificate of appealability, finding that he has failed to make "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).

It is so **ORDERED**.

The Clerk is directed to transmit copies of this Order to any counsel of record and to mail a copy to the *pro se* petitioner.

**DATED:** December 21, 2015.

/s/ John Preston Bailey
JOHN PRESTON BAILEY
UNITED STATES DISTRICT JUDGE